1

2

3

4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHELLEY M. ANDERSON, | NO:  2:14-CV-0227-TOR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 12; 13).  This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion and denies Defendant's motion.

//

//

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3

1   416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2   Commissioner must find that the claimant is not disabled.  20 C.F.R.

3   §§ 404.1520(b), 416.920(b).

4        If the claimant is not engaged in substantial gainful activities, the analysis

5   proceeds to step two.  At this step, the Commissioner considers the severity of the

6   claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

7   claimant suffers from "any impairment or combination of impairments which

8   significantly limits [his or her] physical or mental ability to do basic work

9   activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

10  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

11  however, the Commissioner must find that the claimant is not disabled.  *Id.*

12       At step three, the Commissioner compares the claimant's impairment to

13  several impairments recognized by the Commissioner to be so severe as to

14  preclude a person from engaging in substantial gainful activity.  20 C.F.R.

15  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe as or more

16  severe than one of the enumerated impairments, the Commissioner must find the

17  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

18       If the severity of the claimant's impairment does meet or exceed the severity

19  of the enumerated impairments, the Commissioner must pause to assess the

20  claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on March 1, 2011.  Tr. 76, 77, 199–205, 206–10.  Plaintiff's claims were denied initially and upon reconsideration.  Tr. 134–36, 140–43, 149–51, 154–55.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on February 4, 2013.  Tr. 33–75.  The ALJ issued a decision denying Plaintiff disability insurance benefits and supplemental security income on February 15, 2013.  Tr. 11–25.

The ALJ found Plaintiff met the insured status of the Social Security Act through September 30, 2010.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2006.  Tr. 13.  At step two, the ALJ found that Plaintiff had the following severe impairments:  degenerative joint disease of the lumbar spine, degenerative disc disease of the cervical spine,

bilateral plantar fasciitis; status post fracture hallus limitus, episodic tendinitis of the left ankle, obesity, and episodic anxiety not otherwise specified.  *Id.*  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 14.  The ALJ then concluded that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but only occasionally climb[] ladders, ropes, or scaffolds.  Additionally, the claimant should avoid concentrated exposure to vibration and hazards.  The claimant is also limited to superficial (non-cooperative/non-collaborative) interaction with the public, co-workers, and supervisors.

Tr. 16.  The ALJ found, at step four, that Plaintiff was capable of performing past relevant work as a cashier, receptionist, general office clerk, telephone solicitor, or auto sales person.  Tr. 24.  On that basis, the ALJ concluded that Plaintiff was not disabled as defined under the Social Security Act.  Tr. 25.

The Appeals Council denied Plaintiff's request for review on May 27, 2014, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  Tr. 1–3; 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff raises the following issues for review:

(1) Whether the ALJ erred by "failing to provide clear and convincing reasons for rejecting [Plaintiff's] testimony."  ECF No. 12 at 16–18.

(2) Whether the ALJ properly evaluated Plaintiff's right shoulder pain at step two. *Id.* at 16.

(3) Whether the ALJ properly evaluated the medical opinions in the record in determining Plaintiff's RFC. *Id.* at 9–16

(4) Whether the ALJ properly evaluated Plaintiff's ability to perform past relevant work at step four. *Id.* at 19–20.

## DISCUSSION

### A. Plaintiff's Credibility

Plaintiff contends generally that the ALJ "failed to offer specific, clear, and convincing reasons for discrediting [Plaintiff's] symptom testimony."  ECF No. 12 at 18.  Plaintiff's briefing does not object to any specific aspect of the ALJ's credibility determination.  *See* ECF Nos. 12 at 17–19; 14.  Defendant contends the ALJ provided legally sufficient reasons to reject Plaintiff's testimony.  ECF No. 13 at 14–17.

In social security proceedings, a claimant must prove the existence of a physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. §§ 416.908, 416.927.  A claimant's statements about his or her symptoms alone will not suffice.  20 C.F.R. §§ 416.908, 416.927.  Once an impairment has been proven to exist, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."  *Bunnell v.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

*Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the impairment "could reasonably be expected to produce the . . . symptoms," the claimant may offer a subjective assessment of the severity of the symptoms.  *Id.*  This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured."  *Id.* at 347 (quotation and citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is unreliable, so long as the ALJ makes "a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion.").  If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing."  *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms.  Tr. at 21.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

However, the ALJ did not entirely credit Plaintiff's statements regarding the intensity, persistency, and limiting effect of the symptoms. *Id.* The ALJ did not conclude there was evidence of malingering, and therefore the Court must determine whether the ALJ provided specific, clear and convincing reasons not to credit Plaintiff's testimony of the limiting effects of her impairments. *Chaudhry*, 688 F.3d at 672. The Court concludes that the ALJ provided specific, clear and convincing reasons which are supported by substantial evidence.

In assessing Plaintiff's credibility, the ALJ observed that Plaintiff's "reports to healthcare providers have been inconsistent." Tr. 21. The ALJ noted, for example, that claimant reported in February 2011 that she had been psychiatrically hospitalized in the past, while there are no references to psychiatric hospitalization in the record. Tr. 21, 420; *see also* Tr.447 (Plaintiff's self-reported psychiatric history does not mention hospitalization). An ALJ may properly consider inconsistent statements in evaluating the credibility of a claimant's statements about the severity of her impairments. *See Thomas*, 278 F.3d at 958–59; *see also* SSR 96-7p, 1996 WL 374186 at *5 (July 2, 1996) ("One strong indication of the credibility of an individual's statements is their consistency . . . . The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record."). Here, the ALJ

noted the inconsistencies in statements Plaintiff made to medical providers and properly considered those inconsistencies in evaluating Plaintiff's credibility.

The ALJ also noted that Plaintiff's allegations of severe impairment in the functionality of her right hand "are belied by [Plaintiff's] testimony that she plays guitar and piano for 15–20 minutes at a time." Tr. 21, 66. In assessing credibility, an ALJ may properly consider self-reported activities which contradict allegations of severity. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Finally, the ALJ noted that the record "reveals a pattern of sequential symptoms, which is often suggestive of an individual that may have secondary gain motivation (e.g., to obtain disability benefits)." Tr. 21, 356, 358, 360, 405. The ALJ observed that "[t]his is especially noteworthy as [Plaintiff] reported she goes online and 'reads clinical studies'" and that Plaintiff had a "propensity to grossly over-endorse psychopathological items." Tr. 21, 447.

Plaintiff does not object to any of these specific reasons the ALJ provided for not fully crediting Plaintiff's subjective assessment of her limitations. The Court concludes the ALJ provided specific, clear, and convincing reasons sufficient for this Court to conclude that the adverse credibility was not arbitrary.

## B. Step-Two Evaluation

Plaintiff contends "the ALJ erred in finding [Plaintiff's] right shoulder pain was a non-severe impairment." ECF No. 12 at 16. Defendant contends the ALJ

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

properly considered the evidence and concluded that Plaintiff's shoulder did not significantly limit her ability to perform basic work-related activities. ECF No. 13.

At step-two, an ALJ must determine whether a claimant suffers from an impairment that significantly limits the claimant's physical ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The burden is upon the claimant to show the existence of an impairment by providing "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908, 416.927. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 416.908, 416.927. The Plaintiff must also show that the impairment significantly limits her basic work capabilities. *See Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

The ALJ considered Plaintiff's allegation of significantly limiting shoulder pain, but concluded such a limitation was not supported by the evidence. Tr. 14. Specifically, the ALJ noted that while a March 18, 2011, x-ray image indicated a possible remote joint injury, a March 23, 2011, examination showed that Plaintiff displayed a fairly good range of motion and good strength in the upper extremities. Tr. 14, 319–20, 435. Based upon this, the ALJ concluded that the right shoulder pain did not cause significant limitations.

In support of Plaintiff's contention that the ALJ erred, she cites two sections of the record which include statements regarding her right shoulder. ECF No. 12

at 16.  Plaintiff points first to an "Operative Report" from August 2005 which indicates that Plaintiff then suffered from a right scapular fracture and a grade one acromioclavicular separation of the right shoulder.  Tr. 542.  These injuries resulted from a car accident Plaintiff was involved in at the time.  Tr. 53–54.  This report has no bearing on Plaintiff's present capabilities or limitations.  Moreover, these previous injuries were observed in the 2011 x-ray imaging, which indicated that the joint was "not grossly distorted" as a result of the trauma.  Tr. 435.

Plaintiff also cites, however, to a June 27, 2012, report from Dr. Steven Fowler, which notes that Plaintiff has chronic neck pain that radiates out toward her shoulder and states, "Right greater than left shoulder pain."  Tr. 785–86.  The report also notes "[t]his is focal at the AC joint and worsened with scarf maneuver and provocation of the AC joint."  Tr. 785.  As discussed below, these treatment notes constitute significant probative evidence.  The ALJ erred in failing to demonstrate in her written determination that she considered the treatment notes in evaluating Plaintiff's claimed disabilities.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  On remand, the Commissioner must evaluate Dr. Fowler's treatment notes in determining whether, in light of the entire record, Plaintiff has demonstrated that her shoulder pain significantly limits her ability to perform basic work functions.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

C. Medical Opinions

Plaintiff contends that the ALJ failed to give proper weight to the opinions of Plaintiff's treating physician, Dr. Amber Figueroa, and of examining psychologists Dr. Jeffrey Startzel, Psy.D., and to Tera Rea, Psy.D.  ECF No. 12 at 10–11, 14–16.  Plaintiff also contends that the ALJ erred in failing to consider the opinions of treating physicians Dr. Steven Fowler and Dr. Douglas M. Burns.  ECF No. 14 at 4.

A treating physician's opinions are entitled to substantial weight in social security proceedings.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir.2009).  If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

Dr. Figueroa, Plaintiff's primary care physician, completed a Washington State Department of Social and Health Services ("DSHS") form on April 15, 2011, opining on Plaintiff's physical limitations.  Tr. 311–12.  Dr. Figueroa indicated that during an eight-hour work day Plaintiff was capable of standing for half an hour,

sitting for two hours while standing and walking around every half hour, lifting ten pounds occasionally with only her left hand, and lifting five pounds frequently.  Tr. 311.  Dr. Figueroa also opined that Plaintiff was physically unable to crouch, bend, stoop, or lean her neck down; was "unable to write, play guitar for more than 5 min;" and was "unable to type for more than 30 min."  Tr. 312.

The ALJ assigned Dr. Figueroa's April 2011 opinion little weight.  Tr. 22.  The ALJ noted that Dr. Figueroa's opinion is contradicted by other opinions in the record.  *Id.* (citing Dr. Richard Lynn's opinion, Tr. 460–63).  As such, the Court must determine whether the ALJ provided specific and legitimate reasons not to assign the opinion substantial weight.

The ALJ first noted that the "extreme restrictive limitations" in Dr. Figueroa's April 2011 opinion "are not supported by diagnostic findings."  Tr. 22.  Dr. Figueroa's opinions in the April 11 form are "brief, conclusory and inadequately supported by clinical findings," and therefore the ALJ need not accept them.  *Bray*, 554 F.3d at 1228 (quotation and citation omitted).  The ALJ also noted that the April opinion contradicts Dr. Figueroa's own notation on June 10, 2011, that Plaintiff's back pain is "most likely from [weight] gain" and could be remedied by stretches, aqua therapy, and biking.  Tr. 22, 370.  Such a discrepancy between a treating physician's opinion and the physician's treatment

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

1  notes is a legally sufficient reason for an ALJ not to rely upon the opinion.  *See*

2  *Bayliss*, 427 F.3d at 1216.

3       Dr. Figueroa also opined in a June 2012 letter that Plaintiff's medical

4  conditions made her "unable to work at this time."  Tr. 459.  The ALJ did not

5  assign this opinion controlling weight for the same reasons the April 2011 opinion

6  was not assigned controlling weight.  Tr. 22.

7       The ALJ failed to acknowledge that in early 2012, Dr. Figueroa referred

8  Plaintiff to Dr. Fowler for consultative examination and treatment. Tr. 777–79.   As

9  discussed more fully below, the ALJ did not consider Dr. Fowler's diagnosis and

10  treatment, which seem to support Dr. Figueroa's opinion.  Because the ALJ

11  seemingly ignored this important evidence, a remand is warranted.

12       Dr. Starztel and Dr. Rea both evaluated Plaintiff and opined that she had

13  certain mental functional limitations.  Plaintiff contends the ALJ erred by assigning

14  these opinions little weight.  ECF No. 12 at 10–11.  The opinions are contradicted

15  by the testimony of Dr. Jay M. Toews, who testified as an expert at Plaintiff's

16  hearing.  *See* Tr. 38–47.  The Court must therefore determine whether the ALJ

17  provided specific and legitimate reasons for assigned them such weight.

18       Dr. Starztel completed an evaluation form for the Washington DSHS on

19  March 18, 2004.  Tr. 831–36.  The ALJ assigned little weight to this evaluation

20  because "it was offered for DSHS, which uses different regulations" and because

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16

"the opinion predated the alleged disability onset date by two years."  Tr. 23.

Plaintiff argues the ALJ was required to consider Dr. Starztel's opinion regardless

of whether it was offered for a state agency.  ECF No. 12 at 11 (citing SSR 06-03p,

2006 WL 2329939 (Aug. 9, 2006)).  As demonstrated by the written determination,

the ALJ did in fact consider Dr. Starztel's opinion, but ultimately assigned it little

weight because it predated Plaintiff's onset date—reasoning to which Plaintiff does

not object.  This is a specific and legitimate reason to afford Dr. Starztel's opinion

limited weight.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165

(9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are

of limited relevance.").

Dr. Rea completed an intake form on August 27, 2012, which opined that

Plaintiff had a Global Assessment of Functioning ("GAF") score of fifty.  Tr. 854–

56.  The ALJ assigned the opinion little weight.  Tr. 24.  Plaintiff asserts this was

error, contending that "the ALJ gave this opinion little weight because [the ALJ]

thought Dr. Rea was not an acceptable medical source."  ECF No. 12 at 11.

Plaintiff's reading of the ALJ's determination is incorrect.

The ALJ stated that the record was not clear whether Dr. Rea was an

acceptable medical source, but that the ALJ nevertheless considered the opinion

"pursuant to SSR 06-03p."  Tr. 23–24.  SSR 06-03p states that even if an opinion is

not from an "acceptable medical source," the opinion is nonetheless "important

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

and should be evaluated on key issues such as impairment severity and functional

effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL

2329939 at * 3 (Aug. 9, 2006).

Contrary to Plaintiff's assertion, the written determination demonstrates that

the ALJ considered Dr. Rea's opinion (whether identified Dr. Rea was identified as

an "acceptable medical source" or not) but assigned it little weight explicitly

because "the claimant's mental impairments are generally mild or not supported by

sufficient evidence." Tr. 24. Plaintiff does not assign any error that this particular

reasoning. Indeed, the ALJ's resolution of the conflicting opinions of Dr. Toews

and Dr. Rea is reasonable and must be upheld. *See Batson v. Comm'r of Soc. Sec.*

*Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Finally, Plaintiff argues the ALJ erred by not considering the opinions of Dr.

Steven Fowler and Dr. Douglas M. Burns. ECF Nos. 12 at 11–14; 14 at 2–7.

These opinions appear in treatment notes made after Plaintiff was referred to the

Wenatchee Valley Medical Center in early 2012 by Dr. Figueroa. Tr. 777–96.

Defendant contends the opinions did not provide any specific limitations and

therefore the ALJ was not required to discuss the opinions. ECF No. 13 at 9–10.

On February 15, 2012, Dr. Fowler performed a consultation regarding

Plaintiff's neck and arm pain. Tr. 777–79. Dr. Fowler related Plaintiff's

subjective complaints in his notation. Tr. 777–78. Dr. Fowler also performed a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

physical examination of Plaintiff and observed:  "Normal range of motion.  Pain elicited with palpation throughout right cervical paraspinals, right scapular stabilizers.  Pain behaviors, overreaction.  No gross axial skeletal deformities."  Tr. 778.  Dr. Fowler noted there was "no functionality limiting joint" range of motion and that Plaintiff's neck and shoulders were "negative" to certain objective testing.  *Id.*  Dr. Fowler indicated that Plaintiff "has multiple pain complaints involving neck, shoulders and arms, right is much worse than left.  This seems myofascial in nature."  *Id.*  He also observed, "Regarding her arm numbness and tingling, I cannot say exactly what is causing this.  She is not diabetic.  She does have some overreaction and concern for psychiatric overlay, but still with numbness in all 4 limbs there is concern for some neuropathy of some type."  Tr. 779.  Dr. Fowler concluded that "referral to neurology for further workup and laboratory work is needed."  *Id.*

In a follow-up on February 20, 2012, Dr. Fowler noted "multiple tender points involving [Plaintiff's] cervical, thoracic, paraspinal musculature and shoulder girdle bilaterally."  Tr. 779.  Dr. Fowler also observed that "[Plaintiff] had a few particular trigger points" which were treated by injection of a mixture of lidocaine and DepoMedrol.  Tr. 779, 780.  Dr. Fowler concluded, "Hopefully, these injections will give her some relief.  She has multiple pain complaints and a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19

bit guarded about overall prognosis.  Likely she would benefit from some

behavioral modification in the future given her diffuse complaints."  Tr. 779.

On April 23, 2012, Dr. Fowler again physically examined Plaintiff and

noted, "[Plaintiff] has tenderness in the aforementioned regions, most notably in

the right cervical paraspinals and left upper trapezius.  There is referral pain pattern

when pressing on these regions.  The righ[t] side especially has referral pattern out

to the right shoulder region.  There is worsened pain with neck extension and

lateral rotation."  Tr. 781.  Plaintiff again received trigger point injections in her

neck.  Tr. 781–82.  Dr. Fowler noted Plaintiff made new complaints of lower back

pain and that he would need to fully evaluate them after reviewing Plaintiff's MRI

imaging.  Tr. 781, 782.

On June 27, 2012, Dr. Fowler again saw Plaintiff.  Tr. 785.  He noted

Plaintiff's "complicated pain situation" and related Plaintiff's current complaints.

*Id.*  After a physical examination, Dr. Fowler noted,

> [Plaintiff] has tenderness in her right shoulder.  This is focal at the AC
> joint and worsened with scarf maneuver and provocation of the AC
> joint.  She also has pain in the neck at the C5–6 region, there is point
> tenderness there, and this is worse with facet loading.  This does
> radiate pain out toward her shoulder.  She has low back pain and right
> arm pain that we did not fully evaluate today due to time constraints.

Tr. 785–86.  Dr. Fowler concluded that Plaintiff's "neck pain is very limiting."  Tr.

786.  He also concluded, however, that Plaintiff "should see behavioral medicine

regarding coping strategies, deep breathing, meditation, etc., to deal with her multiple pain complaints" and that, in lieu of medication, he would "like to focus on non-narcotic means, ultimately exercise, weight loss, and occasional injection to deal with her multiple pain complaints." *Id.*

Plaintiff was evaluated by Dr. Burns on August 15, 2012, for her ongoing pain complaints. Tr. 786–87. Dr. Burns' physical examination notes indicated Plaintiff was "slightly guarded with movement but appropriate." Tr. 787. He also noted Plaintiff "is localizing her tenderness to the left lumbosacral junction and gluteal area. She is one-third restricted with lumbar flexion and extension." *Id.* He further noted, "Strength is intact in the lower limbs bilaterally. Straight leg-rise is negative on the right and on the left is with gluteal discomfort. She transfers independently and ambulates with some slight antalgia on the left." *Id.* Dr. Burns concluded that Plaintiff "has not improved with conservative care" and that he discussed further treatment options and considerations with Plaintiff. *Id.* He then proceeded to perform a transforaminal epidural steroid injection. Tr. 788.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins*, 466 F.3d at 883 (quoting SSR 96-08p, 1996 WL 374184 at *5 (July 2, 1996)). However, in interpreting the evidence

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 21

1    and developing the medical record in a written determination, an ALJ is not

2    required to "discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*,

3    341 F.3d 1006, 1012 (9th Cir. 2003).  Rather, an ALJ "must explain why

4    'significant probative evidence has been rejected.'" *Vincent*, 739 F.2d at 1395.

5        The ALJ did not discuss or reference the treatment notes of Dr. Fowler or

6    Dr. Burns in the final written determination.  Defendant argues, however, "that

7    neither Dr. Fowler nor Dr. Burns prescribed limitations on Plaintiff" and that

8    "[w]hen an opinion does not prescribe any specific limitations on a claimant, an

9    ALJ need not assume that the medical source intended to include any limitation."

10   ECF No. 13 at 9–10.  Therefore, Defendant concludes, the opinions "did not

11   contain limitations that the ALJ was compelled to reject or employ, and thus did

12   not require additional analysis." *Id* at 10.  The Court disagrees.

13       Dr. Fowler and Dr. Burns both performed physical evaluations of Plaintiff in

14   which they noted tenderness, pain, increased pain during provocation of her joints,

15   and limitations on Plaintiff's movement.  *See* Tr. 779, 786, 787.  Dr. Fowler, for

16   instance, opined that Plaintiff's pain was "very limiting."  Tr. 786.  Dr. Burns

17   observed limitations in Plaintiff's ability to move her back.  Tr. 787.  These

18   physical examinations are significant probative evidence of Plaintiff's pain and its

19   potentially limiting effects.  There is no indication in the ALJ's written

20   determination that these physical examinations were ever considered.

1       Further, as treating physicians, the ALJ must provide legally sufficient

2   reasons for rejecting the opinions of Dr. Fowler and Dr. Burns.  The ALJ has

3   provided no reasons to assign their opinions any particular evidentiary weight or to

4   reject them in their entirety.

5       As such, the ALJ erred by failing to make sufficiently detailed findings to

6   permit this Court to review the ALJ's ultimate disability decision in light of the

7   entire record of evidence.  *See Hill*, 698 F.3d at 1160 ("Here, the ALJ failed to

8   provide Dr. Johnson's statement any degree of review at all, and gave no reasons

9   for doing so, let alone any clear and convincing reasons."); *Vincent*, 739 F. 2d at

10  1394; *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

11      This error was not harmless because the Court cannot conclude that the

12  omission of these opinions was inconsequential to the ALJ's ultimate

13  determination.  *See Molina*, 674 F.3d at 1115.  Defendant's briefing on the matter

14  suggests a ground for rejecting the opinions which "invites this Court to affirm the

15  denial of benefits on a ground not invoked by the Commissioner in denying the

16  benefits originally."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th

17  Cir. 2006) (quoting *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)).  The

18  Court must reject Defendant's invitation to affirm the determination on grounds

19  not expressly invoked by the ALJ.  *Id.*

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23

1      Moreover, the ALJ's error is compounded by other factors.  First, proper

2  consideration of the observations of Dr. Fowler and Dr. Burns may impact the

3  ALJ's evaluation of Plaintiff's credibility regarding her subjective pain complaints.

4  Second, their observations and treatment may impact the ALJ's evaluation of Dr.

5  Figueroa's opinion which was rejected in part because it was not supported by

6  objective medical evidence and other evidence in the record.  Third, the treatment

7  notes are distinctly different from the evidence which the ALJ expressly

8  considered in evaluating Plaintiff's physical RFC.  *See* Tr. 22.  These evaluations

9  and notations are not cumulative of that evidence, but rather provide the

10 observations of specialized medical providers addressing definite allegations of

11 neck and back pain.  Fourth, the ALJ's evaluation of Plaintiff's physical limitations

12 relied heavily upon the opinion of Dr. Dale Thuline, whose unsupported evaluation

13 predates and is contradicted (at least partially) by the more detailed treatment notes

14 of Dr. Fowler and Dr. Burns.  *See* Tr. 22, 127–30.

15     That is not to say, however, that the treatment notes of Dr. Fowler and Dr.

16 Burns conclusively establish that Plaintiff is in fact disabled.  Indeed, Dr. Fowler's

17 notations in particular cast doubt upon Plaintiff's claimed disability.  Thus, "there

18 are outstanding issues that must be resolved before a determination can be made,

19 and it is not clear from the record that the ALJ would be required to find the

20 claimant disabled if all the evidence were properly evaluated."  *Hill*, 698 F.3d at

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 24

1162.  As such, remand is the appropriate remedy in this matter.  *See id.*;

*McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("There may be evidence

in the record to which the Secretary can point to provide the requisite specific and

legitimate reasons for disregarding the testimony of McAllister's treating

physician.  Then again, there may not be.  In any event, the Secretary is in a better

position than this court to perform this task.").

On remand the Commissioner must consider and weigh the treatment notes

and opinions of Dr. Fowler and Dr. Burns in conjunction with the entire record.

Whether, a proper evaluation of this evidence can be reconciled with the ALJ's

existing RFC evaluation and ultimate disability determination is a matter for the

Commissioner to decide.[1]

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 12) is **GRANTED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

---

[1] The Court need not address Plaintiff's final contention on appeal—that the ALJ

erred in evaluating Plaintiff's ability to perform past relevant work at step four.

Plaintiff may address the matter on remand and in light of any subsequent changes

to Plaintiff's RFC limitations.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 25

1      3.  Pursuant to sentence four of 42 U.S.C. § 405(g), this action is

2          **REVERSED** and **REMANDED** to the Commissioner for further

3          proceedings consistent with this Order.

4      The District Court Executive is hereby directed to file this Order, enter

5   Judgment for Plaintiff, provide copies to counsel, and **CLOSE** the file.

6      **DATED** August 12, 2015.



        THOMAS O. RICE
        United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 26